IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:11-cv-00860-PAB |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| BILL C COSTARAS, BILL C. COSTARAS (A/K/A BASILIOS C. COSTARAS), | ) | REUBEN J. SHEPERD |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

**I.       Introduction**

Before the Court is Plaintiff United States of America's ("the Government") Motion to Modify Consent Garnishment Distribution Order. (ECF Doc. 39). This case was referred to me for the preparation of a Report and Recommendation on the Motion to Modify. (ECF Doc. 40). As will be discussed in more detail below, I recommend that the District Judge grant the Government's Motion to Modify in part.

**II.      Procedural History**

Following the filing of a Complaint to Reduce to Judgement and Collect Taxes (ECF Doc. 1) and an Application for a Writ of Continuing Garnishment (ECF Doc. 9), the Government and Dr. Costaras entered into a Consent Garnishment Distribution Order (ECF Doc. 23) that was signed by the District Judge on November 14, 2023 (ECF Doc. 24). The pertinent provisions of that Consent Garnishment Order are as follows:

>       1.     The United States and Costaras will consent to a Distribution Order in which Southwest Orofacial Group pays the United States thirty-nine percent (39%) of Bill Costaras's monthly gross earnings per month . . . until

1

the judgment debt, including all interest and penalties, is fully satisfied, becomes legally unenforceable, Southwest Orofacial Group no longer owes any payments to Costaras, or until further order of the Court. . . .;

. . .

3. Costaras shall pay to the IRS an amount calculated using the current version of the IRS "Percentage Method Tables for Manual Payroll Systems with Forms W-4 from 2020 of Later" for Monthly Payroll Periods for Single Taxpayers (published in IRS Publication 15-T (2023), Federal Income Tax Withholding Methods); https://www.irs.gov/publications/p15t), as estimated payments towards his current federal income taxes;

. . .

6. To the extent circumstances change, the United States or Costaras may seek a modification of the Distribution Order;

7. If Costaras fails to pay the estimated payments specified in Paragraph 3, above, to the IRS, then Costaras will consent to an increased garnishment payment; . . .

(ECF Doc. 24).

On May 9, 2025, the Government filed a Motion to Modify pursuant to 28 U.S.C. §§ 3013, 3205 and the provisions of the Consent Garnishment Order, arguing that Dr. "Costaras has failed to properly make estimated payments towards his current federal income taxes . . . and because his income had significantly increased" since they entered into the Consent Garnishment Order. (ECF Doc. 39, p. 1). As a result, the Government requested that the garnishment be increased from 39% of his monthly income to 44% plus an additional $10,000 per month. (*Id.*).

Dr. Costaras filed a brief in opposition to the Motion to Modify arguing that he could not afford to have the garnishment increased. (ECF Doc. 43, pp. 5-6). He argued that "the current garnishment rate has turned out to be too much and is too high, knee-capping current compliance

2

given [his] individual circumstances" and "leaves him no ability to address his financial situation and stay current on his current taxes." (*Id.* at pp. 9, 11).

Acknowledging that he has not made his estimated tax payments as agreed to in the Consent Garnishment Order, and required by law, Dr. Costaras proposed a different solution. Dr. Costaras proposed that the garnishment be reduced from 39% of his gross monthly pay to 25% and that $9,000 per month "be withheld by [Southwest Orofacial] and submitted to the Internal Revenue Service via Forms 1040-ES . . . ." (*Id.* at p. 13). Attached to his brief is a list of his monthly expenses. (*See* ECF. Doc. 43-4). This attachment lists all of Dr. Costaras' alleged monthly expenses including housing, utilities, phone bill, professional expenses, credit card payments, an installment agreement with the Ohio Attorney General, and attorney fees, amongst other things. (*Id.*). According to this accounting, Dr. Costaras has monthly expenses of $23,916.44. (*Id.*). He then calculates that with average monthly earnings of $39,548, less the 39% garnishment and expenses, he is left with only $207.84 per month. (*Id.*).

The Government filed a reply brief in support of its motion (ECF Doc. 44) and a supplement to the reply (ECF Doc 45). In the reply brief, the Government revised its requested modification – it withdrew its request that the garnishment increase from 39% to 44% because Dr. Costaras' income had not increased at the rate that it had alleged, but still requested that the Court modify the Order to include the additional $10,000 per month garnishment due to Dr. Costaras' failure to pay estimated taxes. (ECF Doc. 44, pp. 2-3). In its supplement, the Government provided various statements for Dr. Costaras' credit cards. (ECF Doc. 45-1, 45-2, 45-3, 45-4, 45-5). The Government argued that the credit card statements demonstrate that Dr. Costaras: (1) grossly exaggerated his monthly credit card expenses in ECF Doc. 43-4, (2) double

3

counted various expenses in ECF Doc. 43-4, and (3) frequently travels and dines out. (ECF Doc. 45, pp. 2-3).

Dr. Costaras filed a motion to supplement his brief in opposition on August 19, 2025. (ECF Doc. 46). I granted his motion to supplement through a separate non-document entry. (Non-document entry of Sept. 11, 2025). In his supplemental brief, Dr. Costaras modified his listed credit card expenses and included a list of monthly expenses and a calculation with this revised figure. (ECF Doc. 46, p. 1, 46-1). Dr. Costaras also argued that the $10,000 garnishment requested by the Government "would be too much for current taxes." (ECF Doc. 46, pp. 1-2). According to his calculation, his estimated monthly tax obligation would be between $5,400 and $7,000 based on his 2023 and 2024 taxes. (*Id.* at p. 2). Dr. Costaras then modified his proposed solution by suggesting that his garnishment be decreased from 39% to 30% and that Southwest Orofacial withhold, on his behalf via Forms 1040-ES, $7,000 per month. (*Id.*).

**III. Discussion**

    **a. I do not recommend that the Court lessen the percent that Dr. Costaras' monthly pay is garnished from 39% to 30%.**

Pursuant to 28 U.S.C. § 3013, "[t]he court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." I further note that the terms of the Consent Garnishment Distribution Order grant the Court the authority to modify the garnishment.

As previously stated, the Government and Dr. Costaras agreed to the following pertinent provisions in the Consent Garnishment Order:

> 3. Costaras shall pay to the IRS an amount calculated using the current version of the IRS "Percentage Method Tables for Manual Payroll Systems with Forms W-4 from 2020 of Later" for Monthly Payroll Periods for Single

>Taxpayers (published in IRS Publication 15-T (2023), Federal Income Tax Withholding Methods); https://www.irs.gov/publications/p15t), as estimated payments towards his current federal income taxes;
>
>. . .
>
>6. To the extent circumstances change, the United States or Costaras may seek a modification of the Distribution Order;
>
>7. If Costaras fails to pay the estimated payments specified in Paragraph 3, above, to the IRS, then Costaras will consent to an increased garnishment payment; . . .

(ECF Doc. 24).

Here, the Government argues that because Dr. Costaras did not pay his estimated taxes pursuant to Paragraph 3 of the Consent Garnishment Order, Dr. Costaras consents to the modification pursuant to Paragraph 7. (ECF Doc. 39, p. 1). Dr. Costaras does not dispute that he did not make his estimated tax payments in accordance with Paragraph 3 of the Consent Garnishment Order. (*See generally* ECF Docs. 43, 46). Therefore, I agree with the Government that on the face of the Consent Garnishment Order, Dr. Costaras "consents" to increasing his garnishment payment pursuant to Paragraph 7. However, how much the garnishment is increased is not specified and thus left for the Court to decide.

I do note that in his Supplemental Brief in Opposition to Modification, Dr. Costaras proposes decreasing his garnishment payment from 39% to 30% plus $7,000 per month withheld for estimated taxes by Southwest Orofacial. (ECF Doc. 46, p. 2). While Paragraph 6 does contemplate Dr. Costaras' ability to request modification, it is conditioned upon a change in circumstances. Nowhere in either his original Brief in Opposition or his Supplemental Brief in Opposition does Dr. Costaras argue that there has been a change in circumstances. Rather, his only basis for requesting a modification is his contention that the 39% garnishment has proven to be too much in addition to paying his estimated taxes as required by the Consent Garnishment

5

Order. (*See, e.g.*, ECF Doc. 43, pp. 7-11). Dr. Costaras seeks this modification by claiming that at the current rate of garnishment "his only choices are to work more, further reduce his spending, stop hiring lawyers when he is sued and possibly get a less expensive place" to live. (ECF Doc. 43, p. 8). While this Court would never suggest that a litigant should not hire counsel to represent them when faced with a lawsuit, every other option Dr. Costaras lists seems perfectly reasonable given his financial circumstances and demonstrate, by his own admission, that he is capable of reducing his monthly financial burden. Given that Dr. Costaras' circumstances are entirely of his own making due to a long history of shirking his responsibilities, none of the options presented seems inappropriately onerous.

    I further note that while Dr. Costaras has supplemented his Brief in Opposition to respond to the Government's point about his credit card usage, the breakdown provided does not fully address the issues raised. In his supplement, Dr. Costaras provides a calculated average of the monthly payments he makes across six of his seven credit cards.[1] (ECF Doc. 46-1, p. 1). This proposed average is $4,728.00. (*Id.*). In his original Brief in Opposition, Dr. Costaras accounted for approximately $8,112.81 in credit card spending per month across the same six credit cards. (ECF Doc. 43-4, p. 2). This does not address the contention made by the Government that Dr. Costaras is double counting certain expenses. A noticeable example of this is that in both the original Brief in Opposition and the Supplement, Dr. Costaras allocates $1,000 per month for "Ohio Attorney General Collections Installment Agreement" separate from his credit card expenses. However, in the credit card statements provided in the Government's Supplemental Brief in Support of its Motion to Modify, Dr. Costaras appears to pay this $1,000 monthly

---

[1] Without explanation, Dr. Costaras excludes his Concora credit card in this calculation. For consistency purposes, the Court will likewise exclude the Concora credit card in its calculation in the Report and Recommendation.

installment on his Chase credit card. (*See* ECF Doc. 45-1, pp. 3-4). Furthermore, the supplement itself indicates another instance of double counting. One of Dr. Costaras' various expenses is listed as follows: "Phone (on Capital One CC 8369 & 0540)" and itemizes it at $573 per month. This accounting acknowledges the fact that this monthly expense is charged to a credit card, yet separately itemizes it to be counted in the alleged $20,531.63 per month expenses.

Dr. Costaras askes this Court to lessen his monthly garnishment obligation, arguing that it is already unmanageable given his expenses and his obligation to pay current taxes. However, he has not provided this Court with a forthright accounting of his monthly spending to help support his contentions or request, much less demonstrate a change in circumstances. Because Dr. Costaras had not demonstrated a change in circumstances, I do not recommend that the garnishment of his gross monthly wages be modified from 39% to 30%.

> **b. I recommend that the Court impose an additional $4,000 per month garnishment because Dr. Costaras has not met his obligation to pay estimated tax payments pursuant to the Consent Garnishment Order.**

Next, I turn my attention to whether to impose the additional $10,000 per month as requested by the Government. As it pertains to an additional amount of garnishment, Dr. Costaras suggests that the amount be $7,000 rather than $10,000 as he alleges that is more representative of what his actual monthly estimated tax obligation would be.[2]

While the Government asks this Court to acknowledge the fact that Dr. Costaras "frequently travels and dines out" as a means to suggest that he can afford the additional $10,000

---

[2] In this discussion it is not lost on me that Dr. Costaras only suggests his ability to pay this additional amount in light of his request to modify the Consent Garnishment Order from 39% to 30% of his gross monthly income. However, Dr. Costaras remains obligated to pay his annual income tax on at least a quarterly basis, regardless of the garnishment percentage. Therefore, I review this portion of the request to modify separately in light of his contention that the amount requested exceeds his monthly estimated tax obligation.

per month garnishment, I find that unnecessary. While there are various expenses listed in Dr. Costaras' credit card statements that could be classified as frivolous or luxurious, rather than nitpick each of Dr. Costaras' expenses, I instead focus my attention on the purpose of the requested modification. The Government has requested the modification because Dr. Costaras has not met his obligations of remitting estimated tax payments to the IRS, contravening both the Consent Garnishment Order and the law. In response, rather than simply acknowledging his deficiencies, Dr. Costaras instead seeks to have this Court reduce his financial burden while simultaneously not requiring lifestyle changes that he acknowledges he could make. Therefore, in order to address Dr. Costaras' failure to meet his obligations I recommend that the Motion to Modify Consent Garnishment Distribution Order be granted in part. Paragraph 1 of the Consent Garnishment Distribution Order should be modified to continue the garnishment rate at $39**% plus an additional $4,000 per month penalty.** I find that an additional $4,000 per month garnishment appropriately penalizes Dr. Costaras for his failure to meet his obligations thus far while still allowing him the opportunity to abide by his obligations moving forward. I further recommend that Paragraph 3 be amended to require Dr. Costaras to remit his estimated tax payments **monthly** using the current version of the IRS "Percentage Method Tables for Manual Payroll Systems with Forms W-4 from 2020 of Later" for Monthly Payroll Periods for Single Taxpayers (published in IRS Publication 15-T (2023), Federal Income Tax Withholding Methods); https://www.irs.gov/publications/p15t).[3] I find that requiring Dr. Costaras to make his estimated tax payments monthly will create a routine that ensures he remains compliant.

---

[3] [3] This obligation is Dr. Costaras'. In his briefing he has suggested that Southwest Orofacial has agreed to withhold and remit these estimated tax payments on his behalf via IRS Form 1040-ES. I recommend that the Court make no obligation of Southwest Orofacial to do so, but Dr. Costaras and Southwest Orofacial may separately agree to have the payments remitted this way if they so choose.

I believe this should be the last act of grace given to Dr. Costaras in this matter. Dr. Costaras is a highly educated man whose profession entrusts him with the health and safety of others – the Court, the Department of Justice, and his own lawyers should not have to continue to incentivize and babysit him to ensure he meets this most basic of civic responsibilities, to pay his taxes. He has enjoyed the rights and benefits of citizenship long enough without accepting the accompanying responsibilities.

## IV. Conclusion

For the foregoing reasons, I recommend that the Government's Motion to Modify Consent Garnishment Distribution Order be granted in part and that the Order be modified to order that the rate of garnishment be 39% of gross monthly income plus a penalty of $4,000 per month.

Dated: September 11, 2025

Reuben J. Sheperd
United States Magistrate Judge

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the

9

United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).