IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **United States of America,** | Case No. 1:11-cv-00860-PAB |
| Plaintiff, | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **Bill C. Costaras,** | |
| Defendant. | **MEMORANDUM OPINION & ORDER** |

Currently pending before the Court is the United States' Objection (Doc. No. 48) to Magistrate Judge Sheperd's September 11, 2025 Report and Recommendation. Defendant Bill C. Costaras ("Costaras") did not file a response to the United States' Objection. Also pending before the Court is Costaras' own Objection to the Report and Recommendation. (Doc. No. 49.) On September 30, 2025, the United States filed a Response to Costaras' Objection. (Doc. No. 50.) Accordingly, the parties' Objections are ripe for review.

For the following reasons, the United States' Objection is sustained in part, and Costaras' Objection is overruled. The Report and Recommendation is adopted in part and rejected in part. The Garnishment Order (as defined below) is hereby modified as follows:

1. Paragraph 1 of the Garnishment Order shall be modified to require Southwest Orofacial Group to pay the United States thirty-nine percent (39%) of Costaras' monthly gross earnings, plus an additional $7,000.00 per month.

2. Paragraph 3 of the Garnishment Order is modified to require Costaras to remit his estimated tax payments monthly using the current version of the IRS "Percentage Method Tables for Manual Payroll Systems with Forms W-4 from 2020 or Later" for Monthly Payroll Periods for Single

Taxpayers (published in IRS Publication 15-T (2023), Federal Income Tax Withholding Methods); https://www.irs.gov/publications/p15t).

3. All other terms of the Garnishment Order not otherwise modified by this Memorandum Opinion and Order shall remain in effect. Where there is conflict, the terms of this Memorandum Opinion and Order shall control.

## I. Background

On April 29, 2011, the United States filed a Complaint against Costaras for assessed federal income taxes for tax years 1994, 1995, 1998, 2000, 2001, 2002, 2003, 2004, 2005, 2007, 2008, and 2009, and for assessed Trust Fund Recovery Penalty taxes for quarterly tax periods ending December 31, 1998, March 31, 1999, March 31, 2000, September 30, 2000, December 31, 2000, March 31, 2001, June 30, 2001, September 30, 2001, December 31, 2001, June 30, 2002, September 30, 2002, December 31, 2002, June 30, 2003, September 30, 2003, December 31, 2003, March 30, 2004, June 30, 2004, June 30, 2005, December 31, 2005, March 30, 2006, and June 30, 2006. (Doc. No. 1, PageID #1–2.) On December 5, 2011, the Court entered an Agreed Final Judgment. (Doc. No. 6.) Therein, the Court entered judgment in favor of the United States and against Costaras in the amount of $983,546.55, plus interest. (*Id.* at PageID #34.)

Years later, on July 6, 2023, the United States filed an Application for Writ of Continuing Garnishment, which Costaras opposed on September 28, 2023. (Doc. No. 9, 16.) Ultimately the parties resolved their dispute regarding that garnishment, and the Court entered a Consent Garnishment Distribution Order (the "Garnishment Order"). (Doc. No. 24.) Therein, the Court ordered, in relevant part,

> 1. The United States and Costaras will consent to a Distribution Order in which Southwest Orofacial Group pays the United States thirty-nine percent (39%)

of Bill Costaras's monthly gross earnings per month . . . until the judgment debt, including all interest and penalties, is fully satisfied, becomes legally unenforceable, Southwest Orofacial Group no longer owes any payments to Costaras, or until further order of the Court. . . .;

* * *

3. Costaras shall pay to the IRS an amount calculated using the current version of the IRS "Percentage Method Tables for Manual Payroll Systems with Forms W-4 form 2020 or Later" for Monthly Payroll Periods for Single Taxpayers (published in IRS Publication 15-T (2023), Federal Income Tax Withholding Methods); https://www.irs.gov/publications/p15t), as estimated payments towards his current federal income taxes;

* * *

6. To the extent circumstances change, the United States or Costaras may seek a modification of the Distribution Order;

7. If Costaras fails to pay the estimated payments specified in Paragraph 3, above, to the IRS, then Costaras will consent to an increased garnishment payment[.]

(*Id.* at PageID #112–14.)

On May 9, 2025, the United States filed a Motion to Modify Consent Garnishment Distribution Order (the "Motion to Modify") requesting that the Court "modify the Consent Distribution Order to adjust the amount Southwest Orofacial pays to the United States from the current distribution rate of 39 percent of Bill (a/k/a) Basilios Costaras' ('Costaras') monthly gross earnings to 44 percent, plus $10,000." (Doc. No. 39, PageID #216.) The United States filed the Motion to Modify "because Costaras has failed to properly make estimated payments toward his current federal income taxes (thus the additional $10,000) and because his income has significantly increased since the United States agreed to the 39 percent monthly payment (thus the increase from 39 to 44 percent)." (*Id.*) On May 28, 2025, the Court referred the Motion to Modify to Magistrate Judge Shepard for a report and recommended decision. (Doc. No. 40.)

3

On July 15, 2025, Costaras opposed the Motion to Modify, to which the United States replied on July 21, 2025 (Doc. Nos. 43, 44.) Both parties also filed supplements to their briefing. (Doc. Nos. 45, 46.) In Costaras' supplement, he did not generally oppose a modification of the Garnishment Order and offered the following "proposed solution:"

> 1. The garnishment be continued at 30% of Gross earnings[.]
>
> 2. The amount of $7,000 per month shall be withheld by [his employer] and submitted to the Internal Revenue Service via Forms 1040-ES to Dr. Costaras' then current income tax year.
>
> 3. As [his employer] has been providing the documentation to support the garnishment payments, so too will it provide the documentation for the mailing of the $7,000 estimated payments.
>
> 4. We schedule a status conference for November or December to update on the success of the proposed resolution and the application of payments collected so far.
>
> 5. That this be subject to modification.

(Doc. No. 46, PageID #386.)

On September 11, 2025, the Magistrate Judge issued his Report and Recommendation. Therein, the Magistrate Judge made two recommendations. First, the Magistrate Judge recommended that the garnishment of Costaras' gross monthly wages not be lessened from 39% to 30%. (Doc. No. 47, PageID #395–98.) Second, the Magistrate Judge recommended that "Paragraph 1 of the Consent Garnishment Distribution Order should be modified to continue the garnishment rate at 39% plus an additional $4,000 per month penalty" (*id.* at PageID #399) and that "Paragraph 3 be amended to require Dr. Costaras to remit his estimated tax payments monthly using the current version of the IRS "Percentage Method Tables for Manual Payroll Systems with Forms W-4 from 2020 of Later" for Monthly Payroll Periods for Single Taxpayers (published in IRS Publication 15-T (2023), Federal

4

Income Tax Withholding Methods); https://www.irs.gov/publications/p15t)." (*Id.* at PageID #398–400.)

On September 22, 2025, the United States filed an Objection to the Report and Recommendation. (Doc. No. 48.) Costaras did not respond to the United States' Objection. On September 30, 2025, Costaras filed his own Objection to the Report and Recommendation. (Doc. No. 49.) The United States filed a Response on September 30, 2025. (Doc. No. 50.) Accordingly, the parties' Objections are ripe for review.

II. **Standard of Review**

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 U.S. App. LEXIS 27813, at *4 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, No. 1:14-cv-2302, 2015 U.S. Dist. LEXIS 121347, at *4 (N.D. Ohio Sept. 11, 2015) (citing *Powell*, 1994 U.S. App. LEXIS 27813at *4); *see also* Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

III. **Analysis**

The United States objected to the Magistrate Judge's recommended increase of $4,000 in monthly payments instead of the requested amount of $10,000. (Doc. No. 48, PageID #402.) Other than this, the United States represents that "[t]he Report and Recommendation is otherwise unobjectionable." (*Id.*)

5

In its Objection, the United States argues that it "showed that application of the estimated tax formula imposed by the Consent Garnishment Distribution Order to Costaras' gross earnings for the month of June 2025 ($32,017) yielded a required estimated tax payment of $8,231." (*Id.* at PageID #403.) It asserts that "[t]he Report and Recommendation's fundamental flaw is that it mischaracterizes the imposition of an increased monthly garnishment amount as a 'penalty' for the judgment debtor's bad behavior (the failure to pay estimated current income taxes)," but that the increase contemplated by the Consent Garnishment Distribution Order is not a penalty for Costaras' bad behavior but rather a recognition that he is a high-earner and has more funds available to pay the judgment debt when he doesn't pay his estimated taxes." (*Id.* at PageID #404.) It further asserts that the Report and Recommendation "will simply allow the judgment debtor an extra $6,000 per month . . . until the United States gathers evidence that, indeed, he continues not to pay his estimated taxes." (*Id.*) The United States further argues that "Costaras has made no voluntary payments towards his judgment debt, and it is only through forcible collection – the garnishment – that the United States has been able to compel any payment from this high-earning judgment debtor" and that "[a]llowing Costaras to keep more of his earnings by flouting his obligation to pay estimated current income taxes is not warranted." (*Id.* at PageID #405.)

Costaras did not file a Response to the United States' objection and instead filed his own Objection. Costaras' only objection to the Report and Recommendation is that "the $4,000 'additional' amount should be put to current taxes." (Doc. No. 49, PageID #409.) Costaras asserts that "[i]n the R&R, the assumed amount that Dr. Costaras grossed per month was an average of $39,548 based on Defendant's computation from records provided by the United States. It turns out that this amount is too high." (*Id.* at PageID #408.) He claims that he "was temporarily picking up

6

more hours and patients as Southwest Orolfacial Group (SWOF) opened a new office and had a doctor leave" and that "a new doctor has been hired and SWOF is recruiting another doctor." (*Id.*) Thus, according to Costaras, "[t]he additional $4,000 should, plus an amount of $3,000 for a total of $6,000 (sic) additional funds go towards current taxes." (*Id.* at PageID #408.)

The United States responds that "[t]he garnishment cannot be a means of collecting Costaras' current income taxes, as he requests, or, for that matter, any other taxes he may owe" because "[t]he Department of Justice does not have the authority to collect the debtor's current income taxes, and those tax periods are not before this Court." (Doc. No. 50, Page #414.) It argues that "[a]ny additional amount beyond the 39% of his gross earnings subject to garnishment should be – and can only be – applied to the judgment debt." (*Id*. at PageID #414–15.)

Based on the parties' respective Objections, the Court's review at this stage is narrowed to two issues: (1) whether it should adopt the Magistrate Judge's recommended increase of $4,000 per month, and (2) whether to modify the Magistrate Judge's recommendation and require the increase to be paid toward current taxes, as opposed to the outstanding judgment amount.

    **A.    The Court sustains, in part, the United States' Objection**

The Federal Debt Collection Procedure Act, 28 U.S.C. § 3001, *et seq*., "provides the exclusive civil procedure for the United States . . . to recover a judgment on debt." 28 U.S.C. § 3001(a)(1). The Court may "make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." 28 U.S.C. § 3013. District courts have "broad discretion to temporarily suspend or modify a writ of garnishment under § 3013." *United States v. Robinson*, No. 19-CV-50046, 2019 U.S. Dist. LEXIS 22414, at *4 (E.D. Mich. Feb. 12, 2019). "And many courts have found that the discretion afforded by § 3013 permits the court to

consider financial hardship to the defendant and limit the government's enforcement remedies accordingly." *United States v. Freeman*, No. 3:99-CR-101-CRS, 2024 U.S. Dist. LEXIS 175601, at *6 (W.D. Ky. Sept. 27, 2024) (citing cases).

### 1. The parties' arguments before the Magistrate Judge

To resolve the United States' Objection, the Court finds it useful to summarize the parties' arguments that were made to the Magistrate Judge concerning Costaras' current financial situation.

In the Motion to Modify, the United States asserts that "[b]ased on a salary of $458,628, Costaras likely owes approximately $120,000 in federal income taxes for each year." (Doc. No. 39-1, PageID #222.) The United States came to the estimation through counsel's "rough estimate using a tax withholding estimator on the IRS website." (*Id.*) Thus, the United States' request for the $10,000 increase is based on "the amount [Costaras] should have been paying in estimated tax payments ($120,000 / 12 months)." (*Id.* at PageID #223.) The United States points out that, "[f]or the past 6 months, Costaras has received an average of $24,124 per month – after the garnishment payment to the United States." (*Id.* at PageID #224.) The United States also points out that "[t]he reasonable expenses for one person, living in Maricopa County, Arizona total $3,956 per month." (*Id.* at PageID #223.)

Costaras responds that, "at the end of a typical month, after the sizeable garnishment, and his living expenses, Dr. Costaras is operating at a deficit." (Doc. No. 43, PageID #261.) To support this assertion, Costaras attached a spreadsheet itemizing his alleged expenses. (Doc. No. 43-4, PageID #303.) As the United States points out in its Reply, Costaras' proposed solution would be "to require the garnishee to pay $9,000 per month to the IRS as estimated taxes on Costaras' behalf." (Doc. No. 44, PageID #308; *see also* Doc. No. 43 PageID #267 (proposing that "[t]he amount of $9,000 per

month shall be withheld by SWOF and submitted to the Internal Revenue Service via Forms 1040-ES to Dr. Costaras' then current income tax year").)

After the Magistrate Judge held a status conference, the parties submitted additional briefing. The United States submitted "the most recent monthly statements in its possession for the debtor's credit cards and 2024 expenditure summaries for those cards." (Doc. No. 45, PageID #317.) The United States argued that Costaras' list of expenses submitted with his Opposition "grossly exaggerates the debtor's monthly credit card expenses as ranging between $279 and $3,533" because "none of the cards have minimum payments in the thousands of dollars." (*Id.* at PageID #318.) Instead, "all but one of the accounts have minimum payments of less than $100 and the Discover Card's minimum payment is only $147." (*Id.*) The United States also argues that Costaras "double counts expenses" and "the expense summaries show the debtor frequently travels and dines out." (*Id.* at PageID #318–19.)

Costaras responded that after reviewing the credit card statements, after monthly payments on his credit cards and garnishments, Costaras would be left with $3,592 per month. (Doc. No. 46, PageID #385.) Costaras based this amount on an assumed average monthly income of $39,548. (Doc. No. 46-1, PageID #389.) He supported these figures with an updated spreadsheet listing his alleged expenses. (*Id.*) After the Magistrate Judge issued the Report and Recommendation, Costaras now claims that his own calculation was inaccurate and that his average monthly gross income from April 2025 through September 2025 was $31,884. (Doc. No. 49, PageID #408.)

**2.      Costaras is living well beyond his means**

Upon reviewing the evidence submitted by the parties, the Court finds Costaras' position regarding his financial situation disingenuous. Despite his substantial debts, Costaras continues to

9

live well above his means. For example, he spent $17,573.51 on automotive payments (notably one purchase is from "Porsche North Scottsdale") (Doc. No. 45-1, PageID #324; Doc. No. 45-3, PageID #354; Doc. No. 45-5, PageID #378), and he spent thousands of dollars on what appear to be car parts for luxury vehicles.[1] (Doc. No. 45-2, PageID #339; Doc. No. 45-5, PageID #376–77.) Costaras also appears to own a boat and spent nearly two-thousand dollars at several marinas. (Doc. No. 45-1, PageID #326–27; Doc. No. 45-5, PageID #377.)

Likewise, Costaras frequents expensive restaurants racking up large bills as high as $267.31, $282.60, $333.00, and even $540.81. (*See, e.g.*, Doc. No. 45-1, PageID #325; Doc. No. 45-2, PageID #339.) Costaras's expensive tastes do not end there. For example, he spent $411.65 at Simones Beverage, a liquor store, on December 22, 2024.[2] (Doc. No. 45-2, PageID #337.) He also spent $644.46 on December 27, 2024 at Omaha Steaks in Rocky River, Ohio. (Doc. No. 45-5, PageID #376.) These expenses are just a sampling of the unnecessary expenses Costaras incurred during 2024.

In addition to his credit card spending, Costaras could be saving money in other areas. The Court finds it hard to believe that the cheapest place he could rent in Phoenix costs him $3,427.05 per month. (Doc. No. 46-1, PageID #389.)[3] And the Court finds it hard to believe that the cheapest phone/plan would cost him $573.00 per month. (*Id.*)

### 3. Costaras claimed expenses are exaggerated

The Court also finds that Costaras's claimed expenses are exaggerated. After his claimed

---

[1] There are several purchases from "Rimmer Bros," which is a company that sells car parts for luxury car brands. *See* https://rimmerbros.com/.
[2] *See* http://www.simonesbeverage.com/.
[3] As of January 20, 2026, there are listings on Apartments.com for two bedrooms, one-bathroom apartments for $649.00 per month in the Phoenix area.

expenses and the 39% garnishment, Costaras claims he will only have $3,592.76 in income remaining. (Doc. No. 46-1, PageID #389.) To reach this amount, Costaras claims that he is spending $4,728.00 on credit cards per month. (*Id*.) Upon review of the credit card statements submitted by the United States, the minimum payments on those cards total only $634.99 per month. Costaras has not submitted conflicting statements showing that (somehow) his total minimum monthly payments increased to $4,728.00 in 2025. Assuming, for the sake of argument, that his total minimum payments per month on his credit cards total only $1,000, by his own accounting, Costaras would be left with $7,320.67 per month. Moreover, as the United States correctly points out, Costaras' own accounting double counts expenses, like his phone bill for example.

### 4. The Court imposes a $7,000 per month increase on the Garnishment Order

Put simply, the Court is not sympathetic to Costaras's situation. Costaras avoided paying taxes for two decades, and his lifestyle does not reflect a person who owes over $600,000 on a judgment for unpaid taxes. His spending habits do not reflect "a terrible 'businessman'" or a "poor financial manager" as he self-describes himself. (Doc. No. 43, PageID #256.) Instead, his spending habits reflect someone who holds himself above the law. If Costaras was serious about repaying his debts, his lifestyle would have changed. He would be living in a modest apartment, would be driving a modest car, would be eating modest food, and would be cutting costs wherever he could. Instead, he decided to live lavishly and ignore the Garnishment Order's (and more importantly the law's) simple requirement that he pay his current taxes.

Based on Costaras' lavish spending and exaggerated expenses, the Court finds that a $4,000 per month increase is simply insufficient. The Court acknowledges and understands why the Magistrate Judge imposed a $4,000 penalty. The Magistrate Judge focused on the purpose of Section

11

6 of the Garnishment Order, namely the failure to pay current taxes. The Court agrees with the Magistrate Judge's conclusion that a penalty is necessary here but based on the Court's review of the evidence in the record, the Court finds that Costaras has more than enough income available to pay the Judgment, and his ongoing obligations.

As explained above, even if Costaras largely does not change his spending, by his own accounting, he would be left with over $7,000 per month. There is room for him to decrease his monthly expenses by finding a cheaper apartment and finding a work situation that does not require travel between Cleveland and Phoenix. Further, by decreasing his extravagant expenses, he could focus on paying down his credit card bills, which, of course, would leave him with more disposable income per month. The Court therefore finds that a $7,000 per month increase on the Garnishment Order is appropriate. Costaras is advised that the Court will entertain a request by the United States for an increase in that amount should he continue to live a lavish lifestyle and should he fail to pay his current taxes timely.

### B. The Court overrules Costaras' Objection

The Court will not entertain Costaras's request that the increased amount be applied to current taxes. Costaras offers no authority for his request. Indeed, as the United States correctly points out, the garnishment statute would not permit such a request. "A court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, *in order to satisfy the judgment against the debtor*." 28 U.S.C. § 3205(a) (emphasis added). There is no "judgment" against Costaras for his current taxes that a garnishment order would "satisfy." The Court, therefore, overrules Costaras' Objection.

12

V. **Conclusion**

In summary, the Court sustains the United States Objection, in part, and overrules Costaras' Objection. The Garnishment Order is hereby modified as follows:

1. Paragraph 1 of the Garnishment Order shall be modified to require Southwest Orofacial Group to pay the United States thirty-nine percent (39%) of Costaras' monthly gross earnings, plus an additional $7,000.00 per month.

2. Paragraph 3 of the Garnishment Order is modified to require Costaras to remit his estimated tax payments monthly using the current version of the IRS "Percentage Method Tables for Manual Payroll Systems with Forms W-4 from 2020 or Later" for Monthly Payroll Periods for Single Taxpayers (published in IRS Publication 15-T (2023), Federal Income Tax Withholding Methods); https://www.irs.gov/publications/p15t.

3. All other terms of the Garnishment Order not otherwise modified by this Memorandum Opinion and Order shall remain in effect. Where there is conflict, the terms of this Memorandum Opinion and Order shall control.

The Clerk is instructed to mail a copy of this Memorandum Opinion and Order to Southwest Orofacial Group at 10214 N. Tatum Blvd, Suite A1100, Phoenix, AZ 85028.

**IT IS SO ORDERED.**

Date: January 22, 2026

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE